**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

EDWARD BIENKOWSKI AND
FELECIA HAWKINS, individually and
on behalf of others similarly situated

                Plaintiffs,

      v.

CMG MEDIA CORPORATION (d/b/a
COX MEDIA GROUP),

                Defendant.

Case No. 1:22-CV-04462

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CMG MEDIA**
**CORPORATION'S MOTION TO COMPEL ARBITRATION**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................1

FACTUAL BACKGROUND........................................................................2

I.     PROCEDURAL BACKGROUND ........................................................2

II.    WSBTV.COM'S REGISTRATION PROCESS ............................................5

III.   PLAINTIFFS ACCEPTED AN AGREEMENT TO ARBITRATE.............6

     A.    Bienkowski's Agreement to Arbitrate ..................................6

     B.    Hawkins's Agreement to Arbitrate ....................................10

ARGUMENT .............................................................................................12

I.     THE ARBITRATION AGREEMENTS ARE GOVERNED BY THE
FAA ...............................................................................................12

II.    PLAINTIFFS VALIDLY AGREED TO ARBITRATE ..............................14

     A.    Bienkowski Validly Assented to the Arbitration Agreement ...........16

     B.    Hawkins Validly Assented to the Arbitration Agreement .................17

III.   PLAINTIFFS' VPPA CLAIM FALLS WITHIN THE
ARBITRATION AGREEMENT ................................................22

IV.   THE ARBITRATION AGREEMENT INCLUDES A VALID CLASS
WAIVER ...........................................................................................23

V.    THE COURT SHOULD STAY ALL PROCEEDINGS PENDING
ARBITRATION ............................................................................25

CONCLUSION ...........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allied-Bruce Terminix Cos. v. Dobson*,
   513 U.S. 265 (1995)...........................................................................14

*Anders v. Hometown Mortg. Servs., Inc.*,
   346 F.3d 1024 (11th Cir. 2003) .........................................................23

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. 333 (2011).....................................................................13, 24

*Babcock v. Neutron Holdings, Inc.*,
   454 F. Supp. 3d 1222 (S.D. Fla. 2020) ..............................................17

*Bazemore v. Jefferson Capital Systems, LLC*,
   827 F.3d 1325 (11th Cir. 2016) .........................................................16

*Bell v. Royal Seas Cruises, Inc.*,
   2020 WL 5742189, at *5 (S.D. Fla. May 13, 2020)...........................21

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
   2017 WL 7309893 (S.D.N.Y. Nov. 20, 2017).....................................23

*Caley v. Gulfstream Aerospace Corp.*,
   428 F.3d 1359 (11th Cir. 2005) .........................................................13

*Chamlee v. Jonesboro Nursing & Rehab. Ctr.*,
   2019 WL 6042273 (N.D. Ga. Aug. 14, 2019) ....................................16

*Dale v. Comcast Corp.*,
   498 F.3d 1216 (11th Cir. 2007) .........................................................24

*Deverze v. Uber Techs., Inc.*,
   2020 WL 10111001 (N.D. Ga. May 7, 2020).....................................14

*In the Matter of Durango Ga. Paper Co.*,
   309 B.R. 394 (S.D. GA 2004) ...........................................................23

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Epic Sys. Corp. v. Lewis,*
    138 S. Ct. 1612 (2018)......................................................................13, 24

*Feldman v. Star Tribune Media Co.,*
    Case No. 22-cv-0173, Dkt. No. 1 (D. Minn. July 7, 2022) .................................5

*Hancock v. Am. Tel. & Tel. Co.,*
    701 F.3d 1248 (10th Cir. 2012) ....................................................16, 17

*Hennessey v. Kohl's Corp.,*
    571 F. Supp. 3d 1060 (E.D. Mo. 2021) ............................................21

*Jackson v. Cintas Corp.,*
    2004 WL 5545444 (N.D. Ga. Sept. 29, 2004)....................................13

*Jenkins v. First Am. Cash Advance of Ga.,*
    LLC, 400 F.3d 868 (11th Cir. 2005)..........................................24, 25

*Knapke v. PeopleConnect, Inc.,*
    38 F. 4th 824 (9th Cir. 2022) ................................................15

*Kravets v. Anthropologie, Inc.,*
    2022 WL 1978712 (S.D. Fla. June 6, 2022)...................................19, 20

*Lamps Plus, Inc. v. Varela,*
    139 S. Ct. 1407 (2019).........................................................12

*Magnolia Capital Advisors, Inc. v. Bear Steams & Co.,*
    272 F. App'x 782 (11th Cir. 2008) ..............................................16

*Manard v. Knology, Inc.,*
    2010 WL 2528320 (M.D. Ga. June 18, 2010)...................................14

*Mason v. Midland Funding LLC,*
    2018 WL 9439879 (N.D. Ga. Sept. 5, 2018)................................18, 19

*McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.,*
    501 F.3d 1244 (11th Cir. 2007) .................................................12

# TABLE OF AUTHORITIES
## (Continued)

Page(s)

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ...............................................................16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983)................................................................................13

*Nguyen v. Barnes & Noble, Inc.*,
   763 F.3d 1171 (9th Cir. 2014) ...........................................................21

*Person v. Lyft, Inc.*,
   2020 WL 5639804 (N.D. Ga. Sept. 9, 2020)......................................17

*Petersen v. Am. Gen. Life Ins. Co.*,
   2016 WL 7365187 (M.D. Fla. Mar. 30, 2016) ...................................20

*Pieran Zheng v. Live Auctioneers LLC*,
   2021 WL 2043562 (S.D.N.Y. May 21, 2021) .....................................17

*Rahim v. Chime Financial, Inc.*,
   2022 WL 18459836 (N.D. Ga. Nov. 14, 2022) ...................................17

*Rimel v. Uber Techs., Inc.*,
   246 F. Supp. 3d 1317 (M.D. Fla. 2017)..............................................23

*SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*,
   455 F. Supp. 2d 1347 (N.D. Ga. 2006)...............................................15

*Selden v. Airbnb, Inc.*,
   2016 WL 6476934 (D.D.C. Nov. 1, 2016) ..........................................20

*Slaughter v. Amsher Collection Serv.*,
   2016 WL 11572942 (N.D. Ga. Oct. 11, 2016) ....................................23

*Starke v. Gilt Groupe, Inc.*,
   2014 WL 1652225 (S.D.N.Y. Apr. 24, 2014) .....................................19

*Thornton v. Uber Techs., Inc.*,
   858 S.E.2d 255 (Ga. Ct. App. 2021)............................................18, 19

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*United States v. Hornaday*,
   392 F.3d 1306 (11th Cir. 2004) .............................................................14

*Venisee v. Progress Residential, LLC*,
   2022 WL 18780109, (N.D. Ga. Mar. 11, 2022) ...................................15

*White v. Ring LLC*,
   2023 WL 1097554 (C.D. Cal. Jan. 25, 2023)..............................18, 20

**Statutes**

9 U.S.C.
   § 2.............................................................................................................13
   § 3.............................................................................................................25
   § 4.............................................................................................................25

18 U.S.C.
   § 2710.............................................................................................2, 22, 25

Federal Arbitration Act ..............................................................*passim*

Video Privacy Protection Act ....................................................*passim*

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1) ................................................12

**INTRODUCTION**

CMG Media Corporation's ("CMG") terms of service (collectively, "Terms") have prominently disclosed—for over a decade—that users agree to resolve any and all disputes through individual arbitration. In the Amended Complaint ("FAC"), ECF No. 21, Plaintiffs admit they "accessed" those Terms on August 30, 2022, FAC ¶¶ 13, n.1, before this suit was filed. In so doing, Plaintiffs have conceded that this dispute involving wsbtv.com must be resolved in arbitration, not in federal court.

Even before August 30, 2022, Plaintiffs agreed to the Terms, including mandatory arbitration, when they created their wsbtv.com accounts. Plaintiff Bienkowski created two accounts: one in 2011 and one in 2015. Both accounts have the same full name, date of birth, unique screen name, and email username. To create the 2015 account, he entered his information in a webform then checked a box affirming he had read and agreed to the Terms, which were hyperlinked in blue text above the registration button and contained a mandatory arbitration clause. Bienkowski does not dispute creating the 2015 account, focusing instead on a 2011 account presumably because, at that time, the Terms lacked a mandatory arbitration clause. Facts relating to the 2011 account are of no moment, however, because Bienkowski agreed to arbitrate any and all disputes involving wsbtv.com when he

created the 2015 account.

When Hawkins created an account in August 2022, she navigated to wsbtv.com's registration page and chose to log in through Facebook. After clicking a blue button labeled "Facebook," Hawkins was led to a screen informing her that CMG was requesting access to her name, Facebook profile picture, and email address, and that by continuing, she agreed that CMG would receive ongoing access to the information she shared on Facebook, and Facebook would record when CMG accessed the information. A prominent bright blue link to the Terms governing her relationship with CMG, which contained a mandatory arbitration clause, appeared directly beneath the disclosure.

Each Plaintiff agreed—at least twice—to arbitrate any claims involving wsbtv.com. Accordingly, the Court should compel arbitration on an individual basis and stay the case pending resolution of the arbitration.

## FACTUAL BACKGROUND

### I.   PROCEDURAL BACKGROUND

Plaintiffs originally filed this case on November 8, 2022, alleging CMG had violated the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* ("VPPA"), by disclosing Plaintiffs' Facebook IDs and the names of news clips they had viewed on

wsbtv.com to Facebook. ECF No. 1 ("Complaint"). The Complaint alleged Bienkowski had subscribed to wsbtv.com for "approximately one year," and Hawkins for "approximately two years." Compl. ¶¶ 48-49.

On February 20, 2023, CMG filed a motion to compel arbitration, supported by the Declaration of Sara Skinner Cole ("Cole Decl.") and accompanying exhibits, including Plaintiffs' wsbtv.com account creation records. ECF No. 18. Those records show that Bienkowski created two accounts: one on March 4, 2011, and another on July 6, 2015. ECF No. 18-2, Exs. B, C. Each account record contains the name "Edward Bienkowski," the same date of birth, zip code, and unique "moviebug" screenname. *Id.* Each account was created using an email address beginning with "ejb1520," and the Cole Declaration attached correspondence from Plaintiffs' counsel confirming that both "ejb1520" email addresses are Bienkowski's. *Id.*; ECF No. 18-2, Exs. B, C. The Cole Declaration contains a screenshot of wsbtv.com's account registration webform as it existed on July 6, 2015. ECF No. 18-2, Ex. E. The data fields in Bienkowski's 2015 account record match those of the webform, which required users to click a box stating they had read and agreed to the hyperlinked Terms. ECF No. 18-2, Ex. B. Those Terms hyperlinked to CMG's Visitor Agreement dated November 27, 2012 ("2012

Terms"), which contain a mandatory arbitration agreement and class action waiver. ECF No. 18-2, Ex. A.

The Cole Declaration also included Hawkins' wsbtv.com account creation record, showing she logged in through Facebook on August 23, 2022. ECF No. 18-2, Ex. H. The Cole Declaration included screenshots of the screen Hawkins encountered, which contained a prominent hyperlink to CMG's Visitor Agreement dated December 7, 2016 ("2016 Terms"), with the same mandatory arbitration agreement and class action waiver as the 2012 Terms. ECF No. 18-2, Ex. L.

Instead of opposing CMG's motion, Plaintiffs filed the FAC, where they rely on Terms they admittedly "accessed" on August 30, 2022, before they filed this lawsuit. FAC ¶ 13, n.1.[1] At the same time, Plaintiffs baldly assert they were "not presented with an arbitration agreement or class action waiver," *id.* ¶¶ 51, 66, and have "not assented to an arbitration agreement or class action waiver with respect to wsbtv.com." *Id.* ¶¶ 53, 68. Bienkowski does not deny he created the 2015 account and instead focuses on the 2011 account. *Id.* ¶¶ 49–53. Hawkins admits she created

---

[1] https://www.wsbtv.com/visitor-agreement/ (accessed August 30, 2022) ("Each CMG Affiliate Site has adopted the terms and conditions of this visitor agreement [] to the extent applicable"; "By using this Service, you consent to the exclusive jurisdiction of the state and federal courts in Fulton County, Georgia, for all disputes arising out of or relating to this visitor agreement or this Service.").

-4-

a wsbtv.com account in August 2022 by logging in through Facebook. *Id.* ¶¶ 64–65.

## II.    WSBTV.COM'S REGISTRATION PROCESS

CMG is a Delaware corporation headquartered in Atlanta, Georgia, which owns and operates various local news channels, including WSB-TV. FAC ¶ 9; Declaration of Sara Skinner Cole, dated March 27, 2023 ("Decl."), Ex. 1, ¶ 2. WSB-TV operates a website, https://www.wsbtv.com, that hosts local news content consisting of written articles and video clips. Decl. ¶ 3; FAC ¶ 6. All wsbtv.com content is freely available to the public, whether they sign up for a wsbtv.com account or not. Decl. ¶ 4. Users who manually register for an account do so through a webform currently available at https://membercenter.wsbtv.com. FAC ¶ 18. Bienkowski manually created two accounts: one on March 4, 2011, and another on July 6, 2015. Decl. ¶ 11, 12. Hawkins signed up for a wsbtv.com account on August 23, 2022 by using the login through Facebook option. *Id.* ¶ 22; FAC ¶¶ 64–65.[2]

---

[2] When considering Hawkins' notice of the Terms, the Court can take into account the timing and manner in which Hawkins signed up for a wsbtv.com account. Notably, Hawkins used the login through Facebook option a few months before this lawsuit was filed, a few weeks before Plaintiffs' counsel began filing a series of VPPA lawsuits across the country, and just days before August 30, 2022, when Plaintiffs "accessed" the Terms. *See Feldman v. Star Tribune Media Co.*, Case No. 22-cv-0173, Dkt. No. 1 (D. Minn. July 7, 2022).

### III.   PLAINTIFFS ACCEPTED AN AGREEMENT TO ARBITRATE

Both Plaintiffs took affirmative steps to accept the Terms and assented to arbitration when they created their wsbtv.com accounts.

#### A.   Bienkowski's Agreement to Arbitrate

When Bienkowski created his second account on July 6, 2015, he navigated to wsbtv.com's then-existing sign in/register page. Decl. ¶ 12; Ex. E.

Bienkowski then clicked the "Create a New Account" button, which led to the webform shown in Figure 1 below. Once there, he entered his contact information, including his screen name, full name, email address, birthdate, gender, and zip code. Decl. ¶ 14. Directly beneath those fields in the same form was a check-box next to the text: "I have read and agree to the [] Terms of Service and Privacy Policy." *Id.* ¶ 15; Ex. G. "Terms of Service" were hyperlinked, bolded, and conspicuously set off in bright blue text. Ex. F. Bienkowski checked the box affirming he agreed to the Terms and created his account. Decl. ¶ 17.



***Figure 1*, wsbtv.com Create a New Account page, as of July 5, 2015.**

From approximately November 27, 2012, up to and including December 7, 2016, wsbtv.com's Terms of Service hyperlinked to CMG's 2012 Visitor Agreement ("2012 Terms"). *Id.* ¶ 17; Ex. A.[3] The 2012 Terms included a bolded dispute

---

[3] From November 27, 2012 up to and including December 7, 2016, the 2012 Terms were hyperlinked in the footer of wsbtv.com's homepage and on individual webpages.

resolution provision (the "Arbitration Agreement") that read:

**DISPUTE RESOLUTION**

**You and the cmg affiliate that operates the Service agree to arbitrate – rather than litigate in court – any and all claims or disputes between the parties (INCLUDING ANY parents, subsidiaries, AFFILIATES, officers, directors, employees, OR agents OF OURS) that arise out of or in any way relate to this SERVICE AND PRODUCTS OR services that we, OUR AFFILIATES AND/[O]R OUR SERVICE PROVIDER (ON OUR BEHALF) MAY provide to you in connection with YOUR USE OF THIS SERVICE; PROVIDED, HOWEVER, THAT IN NO EVENT SHALL THIS PROVISION PREVENT YOU FROM FILING OR JOINING A COMPLAINT WITH ANY FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCY THAT IS AUTHORIZED BY LAW TO SEEK RELIEF AGAINST us ON YOUR BEHALF. [T]he arbitration between you and the cmg affiliate that operates the Service will be binding AND JUDGMENT ON THE AWARD RENDERED IN THE ARBITRATION MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF.**

In arbitration, there is no judge and no jury, and review of arbitration decisions in the courts is very limited. Instead, disputes will be resolved by an arbitrator, whose authority is governed by the terms of this Agreement. You and the CMG Affiliate that operates the Service agree that an arbitrator may only award such relief as a court of competent jurisdiction could award, limited to the same extent as a court would limit relief pursuant to the terms of this Agreement. An arbitrator may award attorneys' fees and costs if a court would be authorized to do so, and may issue injunctive or declaratory relief if that relief is required or authorized by the applicable law, but that injunctive or declaratory relief may not extend beyond you and your dealings with us. Discovery may be limited in arbitration, and procedures are more streamlined than in court. Notwithstanding this arbitration agreement, you and the CMG

Affiliate that operates the Service may bring appropriate claims against each other in small claims court, if the claims fall within the small claims court's jurisdiction, or any other federal, state, or local government agency authorized by law to hear your claims.

Ex. A.

The Arbitration Agreement set forth the parties' agreement to arbitrate, including that the Federal Arbitration Act ("FAA") applied and the American Arbitration Association's ("AAA") rules governed. *Id.*[4] It also contained a class action waiver:

> **Class Action Waiver**: You and the CMG Affiliate that operates the Service agree that all claims or disputes between you and the CMG Affiliate that operates the Service will be arbitrated individually, and that there will be no class, representative, or consolidated actions in arbitration. If you or we bring a claim in small claims court, the class action waiver will apply, and neither of the parties can bring a claim on a class or representative basis. Furthermore, neither you nor we may participate in a class or representative action as a class member if the class action asserts claims that would fall within the scope of this arbitration agreement if they were directly asserted by you or us. . . .

*Id*.

The 2012 Terms made clear that the Arbitration Agreement applied to all claims "that arise out of or in any way relate to this Service," where "Service" was defined as "our website," *i.e.*, wsbtv.com. *Id*. The subsection headed "Arbitration

---

[4] The provision also listed the website with AAA's rules and toll-free number. Ex. A.

Procedures" explained the process a user must follow to assert a claim, and that the terms "shall be construed in accordance with the laws of the State of Georgia, without regard to its conflict of law rules." *Id.*

### B.    Hawkins's Agreement to Arbitrate

Hawkins registered for a wsbtv.com account on August 23, 2022, through her Facebook account. Decl. ¶ 22; FAC ¶¶ 64–65. To do this, she clicked on the person icon in the top right corner of wsbtv.com's homepage. Decl. ¶ 22; Ex. I. Clicking the icon led to the login/registration page. Decl. ¶ 23; Ex. J. Once there, Hawkins was presented with various log in and registration options.

Hawkins logged in through Facebook by clicking the Facebook button. *Id.* ¶ 21; FAC ¶ 65. This led Hawkins to the screen shown in Figure 2, below. The screen contained the following text: "By continuing, Cox Media Group Memberships JR will receive ongoing access to the information you share and Facebook will record when Cox Media Group Memberships JR accesses it. Learn more about this sharing and the settings you have. Cox Media Group Memberships JR's Privacy Policy and Terms." *Id.* ¶ 25; Ex. K.[5] A prominent bright blue link to

---

[5] When going through the log in through Facebook process, Hawkins also had the option to "edit access" to the information she wished to share. Decl. n. 3; Ex. K.

CMG's Terms of Service appeared within the disclosure. Ex. K. Hawkins clicked

"Continue."



**_Figure 2_, wsbtv.com login through Facebook disclosure.**

From approximately December 7, 2016 up to and including January 17, 2023,

the word "Terms" hyperlinked to CMG's 2016 Visitor Agreement ("2016 Terms"),

which contained the same Arbitration Agreement as the 2012 Terms, the same class

action waiver, and the same choice of law clause. Decl. ¶ 25; Exs. A, L. From

September 2011 to the filing of this action, the footer of wsbtv.com's homepage and

individual webpages informed users: "By using this website, you accept the terms

of our Visitor Agreement . . .," which hyperlinked to the Terms. Decl. ¶ 5.

### ARGUMENT

Plaintiffs assented to and are bound by valid (and identical) arbitration agreements. They manifested their assent very clearly: Bienkowski clicked a box stating he agreed to the 2012 Terms; Hawkins clicked a button that made plain she was agreeing to the 2016 Terms by continuing. The FAA, which applies to both agreements, "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). Plaintiffs' bald denials that they were "presented with" an arbitration agreement or class waiver are not entitled to any weight because they are contradicted by clear evidence of their notice and assent. Therefore, the Court should enforce the agreements by compelling arbitration of Plaintiffs' claims on an individual basis.[6]

### I.   THE ARBITRATION AGREEMENTS ARE GOVERNED BY THE FAA

The FAA reflects both the "liberal federal policy favoring arbitration" as an effective means to resolve disputes and the "fundamental principle that arbitration is

---

[6] The Eleventh Circuit treats a motion to compel arbitration as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction and can properly consider matters outside the four corners of the complaint. *McElmurray v. Consol. Gov't of Augusta–Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007). Courts can exercise their discretion to stay the case pending arbitration or dismiss it. *Jackson v. Cintas Corp.*, 2004 WL 5545444, at *10 (N.D. Ga. Sept. 29, 2004), *aff'd*, 425 F.3d 1313 (11th Cir. 2005) (per curiam) (citations omitted).

a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1367 (11th Cir. 2005). Consistent with these principles, "agreements to arbitrate [are] 'valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Concepcion*, 563 U.S. at 336 (quoting 9 U.S.C. § 2). "[A]ny doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

The FAA "requires courts 'rigorously to enforce agreements to arbitrate' according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and the *rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (citation omitted). The FAA's "transaction involving commerce" language is "broad," *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995) (citations omitted), and covers transactions over the internet, an instrumentality of interstate commerce. *Deverze v. Uber Techs., Inc.*, 2020 WL 10111001, at *2 (N.D. Ga. May 7, 2020) (citing *United States v. Hornaday*, 392 F.3d 1306, 1311 (11th Cir. 2004)).

The FAA governs Plaintiffs' agreements to arbitrate. The 2012 and 2016

Terms contain identical dispute resolution clauses that state: "You and the CMG Affiliate that operates this Service agree that this Agreement affects interstate commerce and that the Federal Arbitration Act applies." Exs. A, L. The FAC's sole VPPA claim hinges on video clips Plaintiffs allegedly watched on wsbtv.com, a website. FAC ¶ 3. *See Manard v. Knology, Inc.*, 2010 WL 2528320, at *3 (M.D. Ga. June 18, 2010) (FAA applied to claims concerning internet-related services).

## II.   PLAINTIFFS VALIDLY AGREED TO ARBITRATE

The evidence is clear that Plaintiffs validly assented to arbitrate this dispute. Bienkowski clicked a box affirming he had read and agreed to the hyperlinked 2012 Terms—a "clickwrap" agreement. Decl. ¶ 14, 17; Ex. F. Hawkins voluntarily clicked a "continue" button where she assented to CMG accessing her information and the 2016 Terms, which were conspicuously displayed and hyperlinked on a single screen—a "sign-in wrap" agreement. Decl. ¶ 25; Ex. K. In addition, Plaintiffs—either by themselves or through their attorney-agents[7]—"accessed" the Terms on

---

[7] *See Knapke v. PeopleConnect, Inc.*, 38 F. 4th 824, 828–29 (9th Cir. 2022) (reversing district court order denying motion to compel arbitration where plaintiffs' attorney had agreed to Classmates.com Terms of Service while investigating plaintiffs' potential claims and remanding for further factfinding). Should the Court deny this motion, CMG requests leave to take limited discovery from Plaintiffs and their counsel about the timing of their agency relationship, including any instructions counsel gave Plaintiffs about how to sign up for wsbtv.com accounts.

August 30, 2022, before this action was filed, and they rely on the Terms for venue. FAC ¶ 13, n.1.

"The essential elements of a contract under Georgia law are: 1) parties able to contract; 2) consideration moving to the contract; 3) a subject matter upon which the contract can operate; and 4) the assent of the parties to the terms of the contract." *SCQuARE Int'l, Ltd. v. BBDO Atlanta, Inc.*, 455 F. Supp. 2d 1347, 1357 n.4 (N.D. Ga. 2006). As shown below, it is well settled that clickwrap and sign-in wrap agreements like CMG's provide conspicuous notice and a valid method of obtaining assent.

Furthermore, under Georgia law, a party cannot avoid arbitration through "unequivocal denials," absent substantial supporting evidence. *See Venisee v. Progress Residential, LLC*, 2022 WL 18780109, at *7 (N.D. Ga. Mar. 11, 2022), *report and recommendation adopted*, 2022 WL 18780106 (N.D. Ga. Mar. 25, 2022) (compelling arbitration). "'A party resisting arbitration [must] substantiate the denial of the contract with enough evidence to make the denial colorable.'" *Chamlee v. Jonesboro Nursing & Rehab. Ctr.*, 2019 WL 6042273, at *1 (N.D. Ga. Aug. 14, 2019) (quoting *Magnolia Cap. Advisors, Inc. v. Bear Steams & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008)). For these reasons, Plaintiffs' mere denials that they were

"presented with an arbitration agreement" carry no weight. FAC ¶¶ 51, 66.

### A.    Bienkowski Validly Assented to the Arbitration Agreement

When Bienkowski created the 2015 account, he validly assented to the 2012 Terms by entering his information and clicking a button on a single, uncluttered screen stating he had read and agreed to CMG's terms, which were bolded, hyperlinked, and set off in bright blue text. Cole Decl. ¶ 14; Ex. F.

Courts throughout the country have enforced clickwrap agreements like CMG's. *See, e.g.*, *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75 (2d Cir. 2017) ("Courts routinely uphold clickwrap agreements for the principal reason that the user has affirmatively assented to the terms of the agreement by clicking 'I agree.'"); *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1257 (10th Cir. 2012) (finding that Florida and Oklahoma law would uphold the validity of clickwrap acceptance of terms with arbitration agreement); *Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1327 (11th Cir. 2016) (describing clickwraps as "agreements [formed by] requiring a user to consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] … transaction") (quotations omitted).

Georgia law recognizes the enforceability of click-wrap agreements. *Rahim v. Chime Fin., Inc.*, 2022 WL 18459836, at *2 (N.D. Ga. Nov. 14, 2022) (enforcing

arbitration agreement under Georgia law where plaintiff was required to click a box stating he had read and agreed to hyperlinked agreements containing arbitration clauses); *Person v. Lyft, Inc.*, 2020 WL 5639804, at *1 (N.D. Ga. Sept. 9, 2020) (enforcing arbitration agreement when user clicked a box demonstrating assent to Terms of Service).

Numerous other district courts have found that clickwraps like CMG's establish conspicuous notice of an arbitration agreement and assent. *See, e.g.*, *Pieran Zheng v. Live Auctioneers LLC*, 2021 WL 2043562, at *5 (S.D.N.Y. May 21, 2021) (enforcing arbitration agreement where plaintiff "clicked 'AGREE,' manifesting plaintiff's assent to be bound by terms containing an arbitration provision"); *Babcock v. Neutron Holdings, Inc.*, 454 F. Supp. 3d 1222, 1231 (S.D. Fla. 2020) (enforcing arbitration agreement where blue, boldface hyperlink to the user agreement's terms appeared directly above the "I Agree" button affirming the user read and understood the agreement). The Court should reach the same result here.

## B.    Hawkins Validly Assented to the Arbitration Agreement

Hawkins assented to the 2016 Terms via a valid sign-in wrap. To log into wsbtv.com through Facebook, Hawkins agreed her information would be exchanged between CMG and Facebook, and the same disclosure contained a prominent

hyperlink to the 2016 Terms preceded by an invitation to "Learn More." Faced with similar agreements, courts regularly find conspicuous notice and assent.

Georgia law recognizes the enforceability of arbitration clauses contained in sign-in wrap agreements, "which 'couple[ ] assent to the terms of a website with signing up for use of the site's services.'" *Mason v. Midland Funding LLC*, 2018 WL 9439879, at *2 n.3 (N.D. Ga. Sept. 5, 2018), *aff'd in part, rev'd in part and remanded*, 815 F. App'x 320 (11th Cir. 2020) (citation omitted). *See White v. Ring LLC*, 2023 WL 1097554, at *4 (C.D. Cal. Jan. 25, 2023) (applying Georgia law when finding that "[w]ith respect to agreements entered into online, courts have found . . . 'sign-up wrap' agreements are enforceable"); *see also*, *Thornton v. Uber Techs., Inc.*, 858 S.E.2d 255, 259 (Ga. Ct. App. 2021) (under objective theory of assent, customer could have been bound to terms containing arbitration agreement where terms were hyperlinked in blue text at the bottom of a screen stating "by creating an Uber account, you agree to our terms & conditions").[8] If the terms are conspicuously presented for review, it does not matter if consumers actually read them. *Id*. at 794

---

[8] In *Thornton*, the court found questions of fact about whether the phone's on-screen keyboard concealed the text and hyperlink informing the user of Uber's terms and conditions, which is not the case here. *Thornton*, 359 Ga. App. at 792.

("failure to read does not excuse a party's obligations under a contract"); *Starke v. Gilt Groupe, Inc.*, 2014 WL 1652225, at *3 (S.D.N.Y. Apr. 24, 2014) (finding assent "[r]egardless of whether [the plaintiff] actually read the contract's terms").

In *Kravets v. Anthropologie, Inc.*, the court found valid notice and assent to an agreement extremely similar to the one Hawkins encountered. 2022 WL 1978712, at *5 (S.D. Fla. June 6, 2022).[9] There, the plaintiff clicked a button marked "GET FREE SHIPPING NOW when you sign up for emails and texts." *Id.* at *4. A disclosure directly above the button provided: "[b]y signing up via text, you agree to receive recurring automated promotional and personalized marketing text messages . . . View <u>Terms</u> & <u>Privacy</u>." *Id.*[10] The disclosure's text, including the hyperlinked terms, appeared in white text against a green background. The terms were "clearly and conspicuously set forth as to give Plaintiff inquiry notice." *Id.* at

---

[9] The *Kravets* court described the sign-in wrap as a "browsewrap" agreement and divided online agreements into only two categories: clickwrap or browsewrap. 2022 WL 1978712, at *4. Courts in this and other districts take a more nuanced approach, distinguishing between clickwrap agreements, sign-in wrap and other hybrid agreements, and browsewraps. *See, e.g., Mason*, 2018 WL 9439879, at *2 (acknowledging federal courts recognize "sign in wrap" agreements). The nomenclature does not change the legal analysis, which requires "actual knowledge of the terms and conditions" or that "the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice." *Kravets*, 2022 WL 1978712, at *4.

[10] *Kravets* was decided under Florida law, which has an "essentially identical" contract formation standard as Georgia. *Petersen v. Am. Gen. Life Ins. Co.*, 2016 WL 7365187, at *11 (M.D. Fla. Mar. 30, 2016).

*5. The court found assent because the plaintiff clicked the button, and the accompanying text and hyperlink put her on notice of "the legal significance of clicking on the button." *Id.*

The same reasoning applies here, where Hawkins received inquiry notice of and assented to the 2016 Terms. CMG's Terms were even more prominent than those in *Kravets*; they were set off in conspicuous blue text and appeared directly beneath the "continue" button together with text informing Hawkins of the legal significance of clicking the button and inviting her to "Learn More." *See also White,* 2023 WL 1097554, at *4–5 (finding valid assent to sign-in wrap agreement where the terms were hyperlinked in blue text, providing "ample opportunity to review those terms"); *Selden v. Airbnb, Inc.*, 2016 WL 6476934, at *2 (D.D.C. Nov. 1, 2016) (enforcing arbitration agreement where plaintiff clicked a "Sign up with Facebook" button, below which appeared several other buttons and the following text: "By signing up, I agree to Airbnb's Terms of Service, Privacy Policy, Guest Refund Policy, and Host Guarantee Terms.").

Finally, even assuming the online agreement could be construed as a browsewrap, it still would be enforceable. If "there is no evidence that the website user had actual knowledge of the agreement, the validity of the browsewrap

-20-

agreement turns on whether the website puts a reasonably prudent person user on inquiry notice of the terms of the contract." *Nguyen v. Barnes & Noble, Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014); *see also*, *Bell v. Royal Seas Cruises, Inc.*, 2020 WL 5742189, at *6 (S.D. Fla. May 13, 2020), *R&R adopted*, 2020 WL 5639947 (S.D. Fla. Sept. 21, 2020) ("When faced with websites containing something less than a pure clickwrap agreement, other courts have similarly evaluated how conspicuous the hyperlink to the site's terms and conditions was."). "Critical is the website's overall design and content, including whether the existence of the relevant terms are reasonably conspicuous to the user." *Hennessey v. Kohl's Corp.*, 571 F. Supp. 3d 1060, 1070 (E.D. Mo. 2021) (enforcing class action waiver in terms where plaintiff received notice of terms during account creation process) (citation omitted). Where "the website contains an explicit textual notice that continued use will act as a manifestation of the user's intent to be bound, courts have been more amenable to" enforcing the agreements. *Id.* (quotation marks and citation omitted).

The notice Hawkins received consisted of a single, tidy screen with a prominent, conspicuous link to the 2016 Terms, set off in bright blue hyperlink text preceded by an invitation to "Learn More." Hawkins also alleges that since August 2022, she has "regularly watched videos on wsbtv.com." FAC ¶ 71. At all relevant

times, the footer of wsbtv.com's homepage and individual webpages stated: "By using this website, you accept the terms of our Visitor Agreement . . ." Decl. ¶ 5. "Visitor Agreement" was bolded and underlined. These disclosures are sufficient to put a reasonably prudent person on inquiry notice of the 2016 Terms, which contain an enforceable Arbitration Agreement.

## III.   PLAINTIFFS' VPPA CLAIM FALLS WITHIN THE ARBITRATION AGREEMENT

Plaintiffs' VPPA claims fall squarely within the Terms' identical Arbitration Agreements, which cover, with two exceptions not relevant here,[11] "any and all claims or disputes between the parties . . . that arise out of or in any way relate to this SERVICE AND PRODUCTS OR services that we . . . MAY provide to you in

---

[11] The exceptions are for claims in small claims court or authorized to be heard by a "federal, state, or local government agency." Exs. A, L. The Complaint alleges that the aggregate amount in controversy exceeds $5,000,000, exceeding the threshold for small claims. Further, no federal, state, or local government agency is responsible for *enforcing* the VPPA. 18 U.S.C. § 2710(b)(2)(C). However, these exceptions provide context for the Terms' governing law/jurisdiction clauses, which, read in harmony with the Arbitration Agreements, clarify that state and federal courts in Fulton County, Georgia, have exclusive jurisdiction over small claims, enforcement of any arbitration award, and enforcement actions brought by state or federal government agencies. Exs. A, L. *See In the Matter of Durango Ga. Paper Co.*, 309 B.R. 394 (S.D. GA 2004) ("[I]t is the [C]ourt's duty," when applying Georgia law, "to find harmony and to reconcile" any apparent conflict between contract clauses.). Under the FAA, courts have read exclusive jurisdiction and choice of law clauses to be separate and distinct from arbitration clauses. *See, e.g., Rimel v. Uber Techs., Inc.*, 246 F. Supp. 3d 1317, 1324 (M.D. Fla. 2017) ("[T]he Court finds that the Arbitration Provision is severable from the Service Agreement. . . .Therefore, the Service Agreement's California choice of law provision has no effect on the Court's determination of the conscionability of the Arbitration Provision[.]").

connection with YOUR USE OF THIS SERVICE." Exs. A, L. The VPPA claim directly relates to Plaintiffs' use of wsbtv.com (FAC ¶ 3), the "Service" defined in the Terms. *Id*. *See Anders v. Hometown Mortg. Servs., Inc.*, 346 F.3d 1024, 1028 (11th Cir. 2003) ("The agreement could not have been broader. Any disputes means all disputes[.]"); *Slaughter v. Amsher Collection Serv.*, 2016 WL 11572942, at *5 (N.D. Ga. Oct. 11, 2016), *R&R adopted*, 2016 WL 11572943 (N.D. Ga. Nov. 30, 2016) (enforcing arbitration of TCPA claim where the agreement covered "any and all claims"); *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *1–2 (S.D.N.Y. Nov. 20, 2017) (enforcing arbitration of VPPA claims).

## IV.   THE ARBITRATION AGREEMENT INCLUDES A VALID CLASS WAIVER

The FAA "requires courts rigorously to enforce arbitration agreements according to their terms." *Epic Sys. Corp.*, 138 S. Ct. at 1621 (quotation marks omitted). Class waivers must be enforced because "[r]equiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA." *Concepcion*, 563 U.S. at 344. The Eleventh Circuit has found "arbitration agreements precluding class action relief are valid and enforceable," especially when they permit vindication of all substantive rights and authorize recovery of attorney's fees and other costs. *Jenkins v. First Am.*

*Cash Advance of Ga.*, LLC, 400 F.3d 868, 877 (11th Cir. 2005) (enforcing arbitration agreement and class action waiver where the agreement allowed claimants to "recover attorneys' fees and expenses '[i]f allowed by statute or applicable law'"); *cf. Dale v. Comcast Corp.*, 498 F.3d 1216, 1220, 1224 (11th Cir. 2007) (finding arbitration agreement and class action waiver unconscionable under Georgia law because "it holds subscribers responsible for additional costs, including fees for attorneys and expert witnesses").

Therefore, the Court should enforce the unambiguous class waivers in the Arbitration Agreements, which are valid and cover Plaintiffs' VPPA claims. *Epic Sys. Corp.*, 138 S. Ct. at 1621. The Arbitration Agreements permit Plaintiffs to recover "attorneys' fees and costs if a court would be authorized to do so, and [the arbitrator] may issue injunctive or declaratory relief if that relief is required or authorized by the applicable law." Exs. A, L. The VPPA permits attorney's fees and "preliminary and equitable relief as the court determines to be appropriate." 18 U.S.C. § 2710(c)(2). Therefore, the class waivers do not deprive Plaintiffs of substantive rights, and Plaintiffs should be required to pursue arbitration on an individual basis. *See Jenkins*, 400 F.3d at 877.

## V.    THE COURT SHOULD STAY ALL PROCEEDINGS PENDING ARBITRATION

Under the FAA, when a case must be removed to arbitration, a party to a written arbitration agreement may petition the court "for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. The FAA mandates that the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3. Plaintiffs' sole VPPA claim can readily be submitted to arbitration. Accordingly, CMG requests that this Court stay this action pending individual arbitration of Plaintiffs' claim pursuant to 9 U.S.C. § 3.

## CONCLUSION

For the foregoing reasons, the Court should order Plaintiffs to arbitrate their claims and stay this action until the conclusion of arbitration.

Dated:      March 27, 2023

By: /s/ *Tiana Demas*
Tiana Demas

Tiana Demas (*pro hac vice*)
tdemas@cooley.com
COOLEY LLP
110 N. Wacker Drive
Suite 4200
Chicago, IL 60606-1511
Telephone: +1 312-881-6500
Facsimile:  +1 312-881-6598

David E. Mills (*pro hac vice*)
dmills@cooley.com
Shane Rogers (*pro hac vice*)
srogers@cooley.com
COOLEY LLP
1299 Pennsylvania Avenue, NW
Suite 700
Washington, DC 20004
Telephone: +1 202-776-2273
Facsimile: +1 202-842-7899

James A. Demetry
Demetry, DeCarlo & Coffman
3666 N. Peachtree Road, Suite 100
Chamblee, GA 30341
Telephone: +1 770-274-4383
jdemetry@demetrydecarlo.com
*Attorneys for Defendant*
*CMG Media Corporation*